IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

EL PASO DIVISION



| | | |
|---|---|---|
| BLANCA ISELA RENTERIA, | § § § | |
| Plaintiff, | § § | |
| v. | § § | NO. EP-14-CV-232-MAT |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | § § § § § | |
| Defendant. | § § | |

**MEMORANDUM OPINION AND ORDER**

This is a civil action seeking judicial review of an administrative decision. Plaintiff appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claims for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Jurisdiction is predicated upon 42 U.S.C. § 405(g). Both parties having consented to trial on the merits before a United States Magistrate Judge, the case was transferred to this Court for trial and entry of judgment pursuant to 28 U.S.C. § 636(c) and Appendix C to the Local Court Rules of the Western District of Texas. For the reasons set forth below, the Commissioner's decision is AFFIRMED.

I. PROCEDURAL HISTORY

Plaintiff filed an application for DIB on August 1, 2011, in which she alleged disability

beginning July 28, 2011 due to arthritis, neck problem, and lower back pain. (R. 153, 182).[1] After her application was denied initially, and upon reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). (R. 97-102, 103-105, 147-152). On November 7, 2012, she appeared with her attorney for a hearing. (R. 51-74). On November 29, 2012, the ALJ issued a written decision denying benefits on the ground that Plaintiff is able to perform her past relevant work as a customer service representative. (R. 77-87). On March 27, 2014, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision the Commissioner's final administrative decision. (R. 5-10).

## II. ISSUE PRESENTED

Whether the ALJ's residual functional capacity ("RFC") finding is supported by substantial evidence.

## III. DISCUSSION

### A. Standard of Review

This Court's review is limited to a determination of whether the Commissioner's final decision is supported by substantial evidence on the record as a whole and whether the Commissioner applied the proper legal standards in evaluating the evidence. *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). Substantial evidence is more than a scintilla, but less than a preponderance, and is such relevant evidence as a reasonable mind might accept to support a conclusion. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). A finding of "no substantial evidence" will be made only where there is a

---

[1] Reference to the record of administrative proceedings is designated by (R.[page number(s)]).

"conspicuous absence of credible choices" or "no contrary medical evidence." *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988).

In determining whether there is substantial evidence to support the findings of the Commissioner, the court must carefully examine the entire record, but may not reweigh the evidence or try the issues *de novo*. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000); *Haywood v. Sullivan*, 888 F.2d 1463, 1466 (5th Cir. 1989). The court may not substitute its own judgment "even if the evidence preponderates against the [Commissioner's] decision" because substantial evidence is less than a preponderance. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). Conflicts in the evidence are for the Commissioner and not the courts to resolve. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993). If the Commissioner applied the proper legal standards and her findings are supported by substantial evidence, they are conclusive and must be affirmed. *Id.*

B. Evaluation Process and Burden of Proof

Disability is defined as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step sequential process: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments; (3) whether the claimant's impairment or combination of impairments meets or equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the impairment or combination of impairments prevents the claimant from performing past relevant work; and, (5) whether the impairment or combination of impairments prevents the claimant from doing any other work. 20

C.F.R. § 404.1520. A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the analysis. *Greenspan*, 38 F.3d at 236.

The claimant bears the burden of proof on the first four steps of the sequential analysis. *Leggett v. Chater*, 67 F.3d 558, 565 (5th Cir. 1995). Once this burden is met, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is capable of performing. *Anderson v. Sullivan*, 887 F.2d 630, 632 (5th Cir. 1989). The Commissioner may meet this burden by the use of opinion testimony of vocational experts or by use of administrative guidelines in the form of regulations. *Rivers v. Schweiker*, 684 F.2d 1144, 1155 (5th Cir. 1982). If the Commissioner adequately points to potential alternative employment, the burden then shifts back to the claimant to prove that she is unable to perform the alternative work. *Id.*

C. The ALJ's Decision

In her written decision, the ALJ determined as a threshold matter that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2015. (R. 82). At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since the alleged onset date of June 28, 2011. *Id.* At step two, the ALJ determined Plaintiff has severe impairments consisting of degenerative joint disease of the cervical spine, status post remote history of fusion; lumbar spondylosis[2]; fibromyalgia; sleep apnea; and, obesity. *Id.* The ALJ determined Plaintiff's mental impairment of depression is nonsevere. (R. 82-83). At step three, the ALJ determined Plaintiff does not have an impairment or combination of impairments that meets or equals one of the

---

[2] Spondylosis is a general term for degenerative spinal changes due to osteoarthritis. DORLAND'S ILLUS. MEDICAL DICTIONARY 1684 (29th ed. 2000).

listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 83-84).

Before reaching step four, the ALJ assessed Plaintiff's RFC and found she is able to perform the full range of light work.[3] (R. 84-87). In making this finding, the ALJ determined Plaintiff's allegations regarding the intensity, persistence and limiting effects of her symptoms were not fully credible. (R. 85). At step four, the ALJ found that Plaintiff is able to perform her past relevant work as a customer service representative, and is, therefore, not disabled. (R. 87).

D. Analysis of Plaintiff's Claims

1. Substantial Evidence Supports ALJ's Determination of Plaintiff's RFC

Plaintiff contends the RFC determination is not supported by substantial evidence because the ALJ failed to include a limitation of occasional reaching and handling to accommodate Plaintiff's neck/cervical spine impairment.

RFC is defined as the most an individual can still do despite her limitations. 20 C.F.R. § 404.1545; SSR 96-8p. The responsibility to determine the claimant's RFC belongs to the ALJ. *Ripley v. Chater*, 67 F.3d at 557. In making this determination, the ALJ must consider all the record evidence and determine Plaintiff's abilities despite her physical and mental limitations. 20 C.F.R. § 404.1545. The ALJ must consider the limiting effects of Plaintiff's impairments, even those that are non-severe, and any related symptoms. *See* 20 C.F.R. §§ 404.1529, 404.1545; SSR 96-8p. The relative weight to be given to the evidence is within the ALJ's discretion. *See Chambliss v. Massanari*, 269 F.3d 520, 523 n.1 (5th Cir. 2001) (citing *Johnson v. Bowen*, 864 F.2d 340, 347 (5th

---

[3] Light work is defined in the regulations as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category if it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567(b).

Cir. 1988). The ALJ is not required to incorporate limitations in the RFC that she did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988).

Plaintiff bears the burden to establish disability and to provide or identify medical and other evidence of her impairments. *See* 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512(c). A medically determinable impairment must be established by acceptable medical sources. 20 C.F.R. § 404.1513(a). Plaintiff's own subjective complaints, without supporting objective medical evidence, are insufficient to establish disability. *See* 20 C.F.R. §§ 404.1508, 404.1528, 404.1529.

As stated by the ALJ, the medical records show Plaintiff "has a long history of musculoskeletal complaints that existed well prior to the alleged onset date." (R. 84). Indeed, the record reflects Plaintiff underwent neck surgery in 2005. (R. 261, 356). The ALJ noted a July 29, 2009 MRI of Plaintiff's lumbar spine showed moderate spinal canal stenosis[4] with moderate bilateral neural foraminal stenosis present from a broad-based disc bulge with a central protrusion at the L5-S1 level. (R. 406). At the T12-L1 level, a large central disc extrusion was present which contacted and posteriorly displaced the traversing lower thoracic cord contributing to moderate spinal canal stenosis. *Id.* There was no significant neural foraminal stenosis. *Id.* The ALJ noted the treatment records from treating source Dr. Augustine O. Eleje revealed that Plaintiff's allegedly disabling impairments were present at approximately the same level of severity prior to the alleged onset date. (R. 85). The ALJ properly concluded this strongly suggests Plaintiff's impairments would not currently prevent her from working. *Id. See Vaughn v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995) (noting that claimant was able to work for several years while suffering from impairments she now

---

[4] Spinal stenosis is the narrowing of the vertebral canal, nerve root canals, or intervertebral foramina of the lumbar spine caused by encroachment of bone upon the space. DORLAND'S ILLUS. MEDICAL DICTIONARY 1698 (29th ed. 2000).

asserted were disabling).

The treatment records of Dr. Eleje consistently show that upon examination, her neck was normal and symmetrical without swelling or tenderness, and she exhibited normal range of motion without pain or crepitus, normal reflexes, and a normal gait and station. (R. 236, 245-246, 304, 308-309, 311-312, 314, 316, 319, 322, 325, 328). Although Plaintiff relies on Dr. Eleje's diagnosis of cervical spondylosis without myelopathy[5] in June 2011, the mere presence of an impairment, however, is not disabling per se. *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983). In fact, as correctly observed by the ALJ, Dr. Eleje's physical examinations of Plaintiff yielded positive signs on only a few occasions.

On June 28, 2011, Plaintiff complained of pain upon digital palpation at numerous sites including low cervical at anterior aspects of intertransverse C5-7 spaces, occipital at suboccipital muscle inserts, second rib at second costochondral junctions, supraspinatus at origins, and trapezius at upper border midpoint. (R. 246). Upon examination, however, Dr. Eleje noted that her neck was normal and symmetrical, without swelling or tenderness, and her range of motion exam was normal without pain or crepitus. Deep tendon reflexes and Romberg reflex were normal. *Id*. Dr. Eleje's diagnosis was fibromyalgia.[6] Notably, no restrictions were imposed. *Id*.

The ALJ also discussed the positive findings upon examination on November 2, 2011, to include pain and stiffness in the neck on flexion and extension and rotation with spasm. (R. 85, 301). There was also tenderness to palpation and decreased range of motion in flexion, extension,

---

[5] Myelopathy is any of various functional disturbances or pathological changes in the spinal cord. DORLAND'S ILLUS. MEDICAL DICTIONARY 1167 (29th ed. 2000).

[6] Fibromyalgia is pain and stiffness in the muscles and joints that is either diffuse or has multiple trigger points. DORLAND'S ILLUS. MEDICAL DICTIONARY 673 (29th ed. 2000).

lateral rotation, and lateral bending. *Id.* The treatment notes state Plaintiff obtained moderate pain relief with nonsteroidal anti-inflammatory drugs. (R. 300). She was to follow up in six months. (R. 302). The notes do not indicate any restrictions were imposed or any additional therapy or treatment was recommended. (R. 300-302).

On September 9, 2011, a Physical Residual Functional Capacity Assessment was completed by state agency medical consultant ("SAMC") James Wright, M.D. (R. 254-261). After reviewing the entire record, Dr. Wright determined Plaintiff retained the RFC to occasionally lift/carry 20 pounds; frequently lift/carry 10 pounds; stand/walk for about 6 hours in an 8-hour workday with normal breaks; sit for about 6 hours in an 8-hour workday with normal breaks; and push/pull, limited only by the weights for lift/carry. (R. 255). No postural, manipulative, visual, communicative or environmental limitations were found. (R. 256-258). Thus, Dr. Wright concluded Plaintiff could perform a wide range of light work. *See* 20 C.F.R. § 404.1567(b).

Dr. Wright noted that, despite her subjective complaints of musculoskeletal pain, Plaintiff's physical examinations from August 2010 through July 2011 revealed all systems were within normal limits. (R. 261). Dr. Wright cited to the results of Plaintiff's physical examination on July 20, 2011 which showed, *inter alia,* normal and symmetrical neck, without swelling or tenderness, a stable gait and station, normal range of motion without pain or crepitus, and full range of motion of extremities. *Id.* Dr. Wright opined Plaintiff's alleged limitations were partially supported by the evidence of record. (R. 261). Significantly, on November 10, 2011, Dr. Wright's RFC findings were affirmed on reconsideration by John Durfor, M.D. (R. 289).

Plaintiff complains the ALJ's decision to afford great weight to Dr. Wright's RFC assessment is flawed because Dr. Wright did not consider the abnormal physical examination findings on June

28, 2011. While Plaintiff is correct that Dr. Wright did not discuss the June 28, 2011 examination by Dr. Eleje, the ALJ discussed this visit in great detail in her written opinion. (R. 85). Moreover, in assessing Plaintiff's RFC, Dr. Wright clearly reviewed the treatment notes from the period of August 2010 to July 2011. (R. 261). There is no indication his conclusions are flawed.

Plaintiff also relies on the Medical Source Statements completed by two treating sources, Dr. Eleje and Dr. Jose Silva. (R. 292-295, 464-467). On December 8, 2011, Dr. Eleje reported Plaintiff was limited to lifting/carrying 20 pounds occasionally and 20 pounds frequently [sic]; unlimited in her ability to stand/walk and unlimited in her ability to sit. (R. 292-293). Dr. Eleje reported Plaintiff was limited in her ability to push/pull, but did not describe the nature and degree of that limitation in the place provided on the form. (R. 293). The form indicates these exertional limitations were based on "physical examination," however, no specific medical/clinical findings were given to support the conclusions. *Id.* Dr. Eleje further reported Plaintiff was limited to occasional climbing, balancing, kneeling, crouching, crawling, and stooping. *Id.* When asked to fully describe and explain these limitations, the reason given is "physical exam." *Id.*

Dr. Eleje found Plaintiff limited to occasional in her ability to reach in all directions, including overhead, and in her ability to handle (gross manipulation). (R. 294). When asked to describe how these activities are impaired and what medical/clinical findings support his conclusions, Dr. Eleje responded, "physical exam." *Id.* No visual/communicative limitations were imposed. *Id.* With regard to environmental limitations, Dr. Eleje found Plaintiff was limited in every category, i.e., temperature extremes; noise; dust; vibration; humidity/wetness; hazards; and, fumes, odors, chemicals, and gases. (R. 295). Again, in the section provided to describe how the environmental factors impair Plaintiff's activities, identify hazards to be avoided, and give the

medical/clinical findings to support the conclusions, is written "physical exam." *Id.*

In a Medical Source Statement dated October 2, 2012, Dr. Silva reported Plaintiff is limited to lifting/carrying 20 pounds occasionally and 10 pounds frequently; can stand/walk for at least 2 hours in an 8-hour workday; must periodically alternate between sitting and standing to alleviate pain; is limited in pushing/pulling in her lower extremities; and, must never climb, balance, kneel, crouch, crawl, or stoop. (R. 464-465). The reasons given for these exertional and postural limitations include: carpal tunnel, cervical fusion, myalgia, arthralgia, fatigue, torn meniscus in knee, pinched nerve in shoulder, vertigo, gastric sleeve, and cataract surgery. (R. 465).

Dr. Silva also reported Plaintiff was limited to occasional reaching in all directions, including overhead, handling (gross manipulation), fingering (fine manipulation), and feeling (skin receptors). (R. 466). No description was given for how the activities are impaired, and the clinical/medical findings given in support state, "arthritis, cervical fusion (as above)." *Id.* No visual/communicative limitations were imposed. *Id.* With regard to environmental limitations, Dr. Silva found Plaintiff was limited in temperature extremes, vibration, and humidity/wetness. (R. 467). In the section provided to describe how the environmental factors impair Plaintiff's activities, to identify hazards to be avoided, and give the medical/clinical findings to support the conclusions, is written "(as above)." *Id.*

A Medical Source Statement is medical opinion evidence that the ALJ considers together with all of the other relevant evidence when assessing the claimant's RFC. SSR 96-5p, 1996 WL 374183 at *5. It is not the equivalent of an RFC assessment and is not binding on the ALJ who has discretion to accept or reject it, in whole or in part. *Id.* When good cause is shown, the opinion of a treating physician may be given little or no weight. *Newton*, 209 F.3d at 455-56 (citing *Greenspan*,

38 F.3d at 237).

Good cause for declining to give controlling weight to a treating source's opinion includes disregarding statements that are brief and conclusory or unsupported by the evidence. *Leggett*, 67 F.3d at 564. As set forth above, the medical source statements of both Dr. Eleje and Dr. Silva are not supported by relevant evidence, such as medical signs and laboratory findings, to support their conclusions. Many of the spaces provided for detailed explanations for the conclusions are left blank or simply refer to "physical examination" without giving any specific findings. As explained by the ALJ, Dr. Eleje's opinion that Plaintiff has limitations in her ability to reach in all directions and handle objects, as well as environmental limitations is inconsistent with other substantial evidence of record. Further, Dr. Eleje's own treatment notes do not support such severe limitations. Therefore, the ALJ properly determined Dr. Eleje's opinion should not be accorded controlling weight.

The Medical Source statement prepared by Dr. Silva on October 2, 2012 found Plaintiff to be limited to, *inter alia*, occasional reach in all directions including overhead. (R. 466). No description was given for how Plaintiff's reaching activities are impaired. *Id.* The clinical/medical findings given in support of this limitation state, "arthritis, cervical fusion (as above)" and refers to a list of diagnoses, some made by other physicians. (R. 465-466). Additionally, Dr. Silva's opinion is inconsistent with Dr. Eleje's opinion in many areas. Importantly, Plaintiff does not cite to any contemporaneous treatment evidence by Dr. Silva, and it does not appear there is any in the record. Accordingly, the ALJ properly declined to adopt Dr. Silva's unsupported opinion about Plaintiff's ability to perform work-related activities. *See Leggett*, 67 F.3d at 566.

Plaintiff also relies on her testimony at the administrative hearing and her statements in

agency reports of pain and difficulty lifting and reaching. The ALJ carefully considered all of Plaintiff's subjective complaints regarding the intensity, persistence, and limiting effects of her symptoms. She determined based on the medical and other evidence of record that, while Plaintiff's medically determinable impairments reasonably could be expected to cause the alleged symptoms, her complaints were not entirely credible. (R. 85). Assessment of credibility is the province of the ALJ, and her credibility determination is entitled to great deference. *Greenspan*, 38 F.3d at 237; *Newton*, 209 F.3d at 459. The ALJ's determination that the medical evidence is more persuasive than the claimant's testimony is precisely the kind of determination the ALJ is best positioned to make. *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994).

The task of this Court is to determine if there is substantial evidence in the record as a whole which supports the ALJ's decision. *Chambliss*, 269 F.3d at 523, citing *Greenspan*, 38 F.3d at 240. There is no error shown in the ALJ's analysis of Plaintiff's RFC. As substantial evidence supports the ALJ's decision, it must be affirmed. *Spellman*, 1 F.3d at 360.

## CONCLUSION

It is therefore ORDERED that the decision of the Commissioner be, and it is hereby, AFFIRMED.

SIGNED and ENTERED this 31st day of August, 2015.

MIGUEL A. TORRES
UNITED STATES MAGISTRATE JUDGE